UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO BARRETO, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | |
| ADIENT PLC, R. BRUCE MCDONALD, JEFFREY M. STAFEIL, | |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

Plaintiff, Julio Barreto ("Plaintiff"), by and through his attorneys, alleges in this Complaint against Adient plc ("Adient") and certain of its current and former executives, upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), conference call transcripts, news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all investors who purchased the securities of Defendant Adient plc ("Adient" or the "Company") between October 31, 2016 and June 11, 2018, inclusive (the "Class Period") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2.     Defendant Adient is an Irish corporation headquartered in Dublin.  The Company was formed when, in late October 2016, Johnson Controls International plc ("Johnson") completed its spinoff of its automotive seating and interiors business.  Adient has 85,000 employees and operates 238 manufacturing/assembly plants in 34 countries worldwide.  The Company designs, engineers, and manufactures automotive seating for all vehicle classes and all major original equipment manufacturers ("OEMs") and claims to be the largest global automotive seating supplier in the world.  Nearly half of its annual revenues derive from the sale of metal components used in seat frames produced by its seat structures and mechanisms ("SS&M") group, also called the metals group.  Adient's common stock has traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ADNT" since October 2016 upon completion of the spinoff from Johnson.

3.     From the date of its formation, Adient and certain of its senior executives highlighted improvements in the efficiency of the Company's capital-intensive metals business (a/k/a the SS&M business) as a key driver of its success.  For example, Defendants repeatedly emphasized to investors that the Company was "solidly on track" to deliver 200 basis point margin expansion by 2020, a feat that depended in large part on operational and financial improvements in its core SS&M business.  Statements such as this, and others, were materially false and misleading, omitted information reasonable investors would consider important, and/or lacked a reasonable basis because, unbeknownst to investors, Adient's core SS&M business faced significant operational problems such that the repeatedly-touted 200 basis point margin expansion was not "on track" at any point in the Class Period.

4.     On January 17, 2018, during an investor conference, Defendants disclosed that "near-term results are being significantly impacted by SS&M." This news drove the price of Adient shares down $8.03 per share, or about 9.8%, to close at $74.15 on January 18, 2018.

5.     Then, during the January 29, 2018 earnings conference call with investors, Defendants announced disappointing financial results for Adient's first quarter of 2018, blaming the outcome on problems in the SS&M business, yet stating (a) "we certainly are not backing away from our commitment to deliver 200 basis points of consolidated adjusted EBIT margin improvement by the end of 2020" and (b) "we're currently examining the composition of these 200 basis points . . . if SS&M, our seat structure and mechanisms business, is incapable of delivering the 100 to 200 basis points of improvement by 2020, we'll look to execute other parts of – other things within the rest of our organization to offset the shortfall."  This news drove the price of Adient shares down $5.53 per share, or about 7.6%, to close at $66.77 that day.

6.      About three months later, on May 3, 2018, Defendants announced they recorded a $299 million impairment charge related to the SS&M business and admitted "the 200 basis points of margin expansion . . . is no longer going to be achievable."  This news drove the price of Adient shares down $6.14 per share, or about 10%, to close at $55.84 that day.  Analysts were shocked by this sudden turn of events.

7.      Just over a month later, on June 11, 2018, Adient announced (without explanation) the sudden and immediate resignation of CEO McDonald and slashed its earnings guidance.  This news drove the price of Adient shares down $8.88 per share, or about 15.6%, to close at $48.10 that day.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  A substantial part of the conduct complained of herein, including the dissemination of materially false and misleading information to the investing public and the omission of material information, occurred in this District.  In addition, Adient's shares are listed on the NYSE, which is located in this District.

10.      In connection with the acts, conduct, and other wrongs alleged herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, without limitation, the U.S. mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff Julio Barreto, as set forth in the accompanying certification, incorporated by reference herein, purchased Adient common stock during the Class Period, and suffered damages thereby.

12.     Defendant Adient plc is organized in Ireland with its principal executive offices located in Dublin.  Its ordinary shares trade on the New York Stock Exchange under the ticker "ADNT."

13.     Defendant R. Bruce McDonald ("McDonald") was Adient's Chief Executive Officer at all relevant times.

14.     Defendant Jeffrey M. Stafeil ("Stafeil") has been Adient's Executive Vice President and Chief Financial Officer at all relevant times.

15.     The defendants listed in paragraphs 12-14 are collectively referred to as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16.     On October 31, 2016, Johnson Controls International plc announced the completion of the spinoff of its automotive seating and interiors businesses, which resulted in the formation of Adient plc.

17.     Defendant McDonald, a former Executive Vice President and Vice Chairman at Johnson Controls, a wholly-owned subsidiary of Johnson Controls International plc, became the initial Chairman and CEO of the newly formed Adient plc.

18.     During the September 15, 2016 investor meeting leading up to the spinoff, Defendants told investors why Adient was a "solid investment," saying that an "[u]pward trend

in profitability" was "expected to continue" and ". . . 200 bps of margin improvement expected over the mid-term[.]"

19.    During the Class Period, Defendants continually, falsely, and misleadingly reiterated these claims.

**Materially False and Misleading
Statements During the Class Period**

20.    On October 31, 2016, when Adient started trading on the New York Stock Exchange, *Reuters* quoted defendant McDonald as stating, "We think we have a couple hundred basis points of margin expansion we can deliver, based on things we have 100 percent control of."

21.    The statement in paragraph 20 above was materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statement, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not in fact achievable.

22.    On November 8, 2016, Defendants convened Adient's Q4 2016 earnings conference call with investors.  During this call, a Barclays analyst asked for an update on "the metals margin improvement exercise."  Stafeil responded stating in pertinent part as follows:

> Yeah.  The metals business as we've said was not going to be the short-term correction or the short-term improvements in our margin.  It was going to be mostly from our SG&A initiative and our corporate allocation reduction as we rebuild our own corporate overhead as we separated from Johnson Controls.  That said, **we do see a big improvement in metals**, and I know it's been somewhat of a long road.  But as you look at the metals business, there's a couple of components to the increase year-over-year, the big – all right, so that'd be – a couple of components to our increases as we move out a couple of years, the big one is really the launch of several new programs.  **We've mentioned we have some mega launches going on in the metals business.  That's going to be the biggest driver.  That will start to really impact our results, in 2017 a little bit, but in 2018 and 2019 more specifically**.  There's also some capacity that we

have primarily in Western Europe that needs to be transitioned to Eastern Europe to lower cost countries, that process is underway, the results will start to show a little bit more in 2018 than they do in 2017.  So, yeah we have seen a little bit of improvement on the metals side, but we expect that improvement to ramp up as those new programs come to launch and some of the restructuring initiatives [ph] go into full set.[1]

23.     During the same call, McDonald told another analyst:

**[W]e're very comfortable with the plan that we have to improve metals.**  It's definitely not the plan that we thought it was going to be three, four years ago.

If you look at the current product portfolio put in a low-cost country operations and with the right manufacturing equipment, *i.e.*, like we did in China where we've built the business from scratch, it is capable of earning double-digit margin.  And so, **we're confident we're going to get there, it's a big – it's half the driver of our 200-basis point of margin expansions**, being conservative and it's not going to happen in that part of our plan in one or two years, it's going to take us four years."

24.     During the January 11, 2017 Deutsche Bank Global Auto Industry Conference,

Stafeil told investors:

**We talked about a journey towards 200 basis points of margin improvement** over the next couple of years.  We are doing a little better as we sit here today, or it looks like we're doing a little bit better from a forecast standpoint.  And thus, we would think that our EBITDA and other earnings metrics should be, I'd say, very achievable and maybe even a little bit better as we look at that guidance . . ..

\*     \*     \*

So   we   drive   future   growth   and   we   look   for   future   earnings growth . . . .  **We'll benefit from** our margin drive, our reduction in SG&A, **our improvement of the metals business**, our move to lower-cost manufacturing regions globally, and then just an improved product mix as we look at our mix of business.  We've done some restructuring efforts, and we're in the midst of several restructuring efforts that are expected to give us $100 million of benefit, but **all this should manifest itself over the course of the midterm to a 200-basis-point improvement in our overall margin**.

25.     This news drove the price of Adient shares up $3.02, or over 5%, to close at

$61.56 on January 11, 2017.

---

[1]     Unless otherwise noted, emphasis is added throughout.

26.     The statements in paragraphs 22-24 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

27.     On February 3, 2017, Defendants issued a news release announcing Adient's financial results for the first quarter ended December 31, 2016.  During the earnings conference call held that day, McDonald stated: "We also have talked about earnings expansion through a number of self-help initiatives, we have a four year goal here to get to 200 basis points improvement, and we're off to a great start."   In response to an analyst's question about the concerns investors should be thinking about, McDonald downplayed internally known problems in the metals business, stating: "Metals turnaround is – it's beneficial to this year, but it's really a 2018-2019 story, doesn't really move the needle a lot."

28.     Stafeil reiterated, "[r]egarding our goal to increase our margins by 200 basis points excluding equity income, we're off to a very good start," and further explained:

> Clearly, the results posted today, combined with the performance achieved in Q4 of last year, demonstrate we are on track to delivering our short-term margin improvements.  Meanwhile, **the metals business is operating according to plan and is expected to drive further margin expansion in late fiscal 2018 and fiscal 2019** after they complete some of their restructuring projects and execute on the significant new launch inventory in the system.
>
> If you recall, at the Analyst Day of September, I mentioned progress on our margin initiative would be tracked against the LTM at June 30, 2016 results.  Although we were using JCI's reporting definitions of that time, which are slightly different versus Adient's adjustments and definitions today, **the puts and takes do not change our commitment to delivering at least 200 basis points of improvement.**

29.     On February 8, 2017, Defendants filed Adient's Form 10-Q for the quarter ended December 31, 2016.   McDonald and Stafeil certified this filing.   This Form 10-Q and

Defendants' certification were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because Defendants did not disclose known material adverse trends in Adient's core SS&M business.

30.     In response to this filing, the price of Adient shares rose $0.41 to close at $61.19 on February 9, 2017.

31.     The statements in paragraphs 27-28 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

32.     On April 28, 2017, Defendants issued a news release announcing Adient's financial results for the second quarter ended March 31, 2017.  During the earnings conference call with investors that day, McDonald told them:

> Although this is only our second quarter of reporting our numbers as an independent company, *we're well on the way to delivering on our midterm commitments, which are really simple.  It's 200 basis points of margin expansion*, and that's without the benefit of a growing equity income base, accelerating our free cash flow, de-leveraging our balance sheet, and returning the seating business here at Adient to its historic growth trajectory.
>
> *       *       *
>
> The other thing I'd point out is many of these programs – and we always show a number of them in Europe and Asia here, and South America – a number of these start to include our next-generation of global front and rear seat structures, particularly the VW Gen 2 program, which is a huge launch for us.  **A lot of the financial performance of our metals business has been tied up introducing a couple of really big programs.  And as that business continues to improve, and in the quarter it did better than it had last year, we're starting to see the accretive margin impact** of launching those next-generation products into the market.

33.     Stafeil added:

The results posted today, combined with the performance achieved over the past two quarters, demonstrate **we are on track to deliver** our short-term margin improvements.  Meanwhile, **the metals business is operating according to plan** and is expected to drive further margin expansion in fiscal 2019 after they complete some of their restructuring projects and execute on the significant new launch inventory in the system.

34.     In response to an analyst's question on whether investors should be thinking about an upside from the 200 basis point margin expansion, Stafeil answered in part:  "I don't know if there's a limit per se, because there's some element of the farther-away science becomes a little challenged" and "if you look at that set of numbers, we have an opportunity as revenue continues to grow, which we think it will grow after 2019 with improved order book, to get some benefit of increased scale, which I think is just an opportunity to go north of that number."  McDonald added "I think beyond 2020, we still have room to grow," "I do not think our – we can continue to drive our SG&A lower, lower, lower, and lower," and "the metals improvement, I think the scale benefit that we can get by starting to grow our footprint again or the capacity utilization is to be a tailwind."

35.     Defendants' statements drove the price of Adient shares up $1.22, or about 1.6%, to close at $73.56 on April 28, 2017.

36.     The statements in paragraphs 32-34 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

37.     On May 1, 2017, Defendants filed Adient's Form 10-Q for the quarter ended March 31, 2017.  McDonald and Stafeil certified this filing.  This Form 10-Q and Defendants' certification were materially false and misleading and/or omitted information a reasonable

investor would consider important and/or lacked a reasonable basis because Defendants did not disclose known material adverse trends in Adient's core SS&M business.

38.     In response, the price of Adient shares rose $0.93 to close at $74.49 on May 1, 2017.

39.     On July 27, 2017, Defendants issued a news release announcing Adient's financial results for the third quarter ended June 30, 2017. During the earnings conference call with investors that day, McDonald assured investors:

> So we are three quarters away to a year here in fiscal 2017.  And I guess my overall comments is I think **we are solidly on track in terms of delivering the commitments that we've made to the investment community**, both here in the short-term, but also the trajectory on to deliver our mid-term commitments.

40.     Stafeil similarly assured investors:

> Now, let's move to slide 12.  We included a chart showing our progress towards our goal to increase Adient's margins by 200 basis points excluding equity income.  As you can see from the chart on the left-hand side of the slide, **we are solidly on track** and have made significant progress over the past four quarters.
>
> \*          \*          \*
>
> Operational performance also contributed to the margin performance in the quarter and partially offsetting these benefits as discussed earlier are unfavorable commodity, material cost and FX.   Meanwhile, **the metals business is continuing to execute towards 2019 margin expansion targets**.  The business is working to complete several restructuring project and execute on the significant new launch inventory in the system.

41.     The statements in paragraphs 39-40 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

- 10 -

42.     On July 31, 2017, Defendants filed Adient's quarterly financial statements on Form 10-Q for the three and nine months ended June 30, 2017.  McDonald and Stafeil certified these statements.  This Form 10-Q and Defendants' certification were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because Defendants did not disclose known material adverse trends in Adient's core SS&M business.

43.     On August 8, 2017, Defendants presented at the J.P. Morgan Auto Conference. Stafeil assured investors:

> If you look at the drivers of our growth, the drivers of our future earnings, things that Bruce [McDonald] talked about, in the middle of the page here you talk about some of the self-help opportunities, the improved operational performance, the G&A reduction, **metals and mechanisms, which is the next part of the story in our margin improvement is really a 2019-2020 story.  But a big part of our self-help is we get that 200 basis points** of improved margin on a consolidated side.

44.     During the Q&A, the following exchange occurred:

**Ryan J. Brinkman:**  Great.  That's helpful.  Thank you.  I have a bunch of questions.  I'll just ask one more and I'll turn it over to audience though.  **The margin improvement.**  Since the spin from Johnson Controls, Adient has really consistently beat Street expectations relative to margin.  Firstly, I'm just curious how **the margin is tracked relative to your own sort of internal projections?**

And then secondly, do you think that the – stronger than consensus margin, it just suggests a more sort of frontend loading of the eventual margin improvement than the Street imagined or do you think that it could in fact portend a larger overall opportunity such that maybe the out-year margin could surpass guidance?

**Jeffrey M. Stafeil**:  Good question, Ryan.  In the first piece of whether it's better or worse than expectations, I would say, if sales have been more cooperative, we probably – we would have expected to do a little bit better on margin.  But **we're very pleased with what we've seen from an operational standpoint**.  I would say as we look across the organization globally and look at the performance that people have achieved and taking out cost but also making sure that they're flexing their operating – operations to demand.  We've seen really good results there.  So **I'd say pretty much on expectation.**

- 11 -

To your point about where we can go from here.  If you look at, we'll say, 2019 to 2020, and we start to get some of that backlog coming in to the overall business, I do see opportunities for us on the margin standpoint but it's going to be depending on a bid [sic] on sales.  And I'd say *the story we have in metals is still developing.  I'd say that's on path but 2019 and 2020 are big years there*.

So, *I would still use 200 basis points on your models*.  Hopefully, we'll end up being able to beat that and if sales come in a little bit better and things like aircraft for some of our adjacent market opportunities come in, obviously, we'll look to beat what we have put out there.

45.     The statements in paragraphs 43-44 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

46.     On September 14, 2017, Defendants presented at the Royal Bank of Canada Global Industrials Conference.  There, the following exchange occurred:

**Joseph Spak:**  Okay.  Since you sort of – **the conversation sort of went a little there to the margins in the self-help**.  Look, I think you've done a great job sort of post-spin with the margin trajectory.  My opinion, arguably, and I guess curious for your comments, but it seems like you're even a little - probably a little bit ahead of schedule on some of the SG&A savings.

So, one, **how do we think about sort of the cadence of the rest of the SG&A savings?  And then beyond that, what are sort of further pluses, minuses, puts and takes to the margin?**  I mean, does it become a little bit more volume dependent because of the utilization stuff you mentioned?

**Mark Oswald** [Adient director of investor relations]:  Yeah.  Great question.  So again, just to kind of reset everybody, when we launched and we became the independent company, we said there are going to be really three buckets which we're going to focus in terms of getting the net 200 basis points of margin improvement.

The first one being SG&A and we said that would be 150 basis points in 2017 and 2018.  We'll be finishing 2017 and we've indicated that we'll be about two-thirds of the way through in 2017.  So I'd expect as we progress through 2018, we'll get the other 50 basis points of there.  So, again, more work to do there, but we feel confident that we'll get that.

**The other piece is really the metals performance, and that's a 2019-2020 time period we'll get that 150 basis points.**  And that 300 basis points of overall improvements can be offset by about 100 basis points of what I'd call growth investment.  And that's investment that we'll be spending on in terms of supporting the new business backlog and the new business wins that we've had in 2016 and 2017 year-to-date.  Certainly, the West Coast strategies, the aircraft seating, et cetera.

So I think when you think about cadence especially when you go from 2017 to 2018, yes, definitely more SG&A savings.  **We'll have more investment spending that we're spending there and then it'll put us on that trajectory for that overall 200 basis points as we move from 2019 into 2020**.

47.     These comments drove the price of Adient shares up $3.86, or about 5%, to close at $80.26 on September 15, 2017.

48.     The statements in paragraph 46 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

49.     On November 2, 2017, Defendants convened Adient's Q4 2017 earnings conference call with investors.  During this call McDonald assured investors:

First of all, Q4 adjusted EBIT of $296 million was up about 3% year-over-year, with a corresponding margin of 7.4% which was up 10 basis points year-over-year.  For the full year, we demonstrated solid execution against our commitment to grow our earnings.  And with revenues being down, adjusted EBIT and corresponding margins were up about 8% and 80 basis points year-over-year respectively.  **We're well on our way to achieving the 200 basis points of margin expansion that we've committed to.**

\*       \*       \*

We've always said *the restructuring part of the metals turnaround is in the 2019 and 2020* story, with very good sight of visibility.  And the head count and the losses that those facilities have, we're highly confident that we're going to put behind us.

\*       \*       \*

- 13 -

In conclusion here, as you can see from our financial results for the year, I think we've made great progress in terms of demonstrating our commitment and our ability to expand our margins. **We're in line with our guidance**. SG&A this year has been the primary driver, and we expect to see some more progress on that last year as our head count initiatives take hold.

And while **in metals we're going to work through some short-term issues, we think we're going to be back on track in the middle of 2018 and beyond** for us to get the improvements that we quite rightly expect from that business.

*        *        *

We had a great year one. We really feel good about the foundation that we've laid here to deliver our mid-term commitment and **we're solidly on track**. We're pleased with our results. We've got a lot of hard work ahead of us, and we intend to build on the positive momentum here that we've established to further position Adient for long-term success."

50.    During this investor call, Stafeil similarly stated, "[a]nd important to note, **the progression to our 200-basis-point improvement in margins remains on track.**"

51.    The statements in paragraphs 49-50 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

52.    On November 15, 2017, Defendants presented at the Barclays Global Automotive Conference. During this conference, Stafeil again assured investors:

And as we look at our investment thesis, our metals business is the most highly engineered. We're the biggest in the space. We have a competitive advantage and it is a pull for bringing and sourcing work to Adient to use our metals business.

All that being said, through a variety of things and some historical challenges with capital allocation to the business and some acquisitions which were timed sort of at a time when Johnson Controls subsequently pivoted away from automotive. So, all that sort of the backdrop **where we said we could take this business improve it by 100 to 200 basis points, still feel very confident that we can do that.**

- 14 -

53.     The statements in paragraph 52 above were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable.

54.     On November 22, 2017, Defendants filed Adient's Annual Report on Form 10-K for the fiscal year ended September 30, 2017.  McDonald and Stafeil certified this report.

55.     With respect to 2017 restructuring and impairment costs, Defendants stated:

> ***Adient committed to a significant restructuring plan in fiscal 2017*** in order to drive cost efficiencies and to balance our global production against demand ***and recorded $46 million of restructuring and impairment costs in the consolidated statement of income***.  The restructuring actions related to cost reduction initiatives in the Seating segment.  The costs consist primarily of workforce reductions and plan closures.  Adient currently estimates that upon completion of the restructuring actions, the fiscal 2017 restructuring plan will reduce annual operating costs by approximately $20 million, which is primarily the result of lower cost of sales and selling, general and administrative expenses due to reduced employee-related costs, of which approximately 60%-65% will result in net savings.  Adient expects that savings, net of execution costs, will partially be achieved in fiscal years 2018-2019 and the full annual benefit of these actions is expected in fiscal 2020.  The restructuring actions are expected to be substantially complete in fiscal 2020.  The restructuring plan reserve balance of $38 million at September 30, 2017 is expected to be paid in cash.

56.     With respect to accounting for goodwill and other long-lived assets, Defendants stated:

> Goodwill reflects the cost of an acquisition in excess of the fair values assigned to identifiable net assets acquired.  ***Adient reviews goodwill for impairment during the fourth fiscal quarter or more frequently if events or changes in circumstances indicate the asset might be impaired*** . . . .

> Adient reviews long-lived assets, including property, plant and equipment and other intangible assets with definite lives, for impairment whenever events or changes in circumstances indicate that the asset's carrying amount may not be recoverable . . . .

- 15 -

In fiscal 2017, Adient concluded it had no triggering event requiring assessment of impairment for certain of its long-lived assets.

57.     The statements in paragraphs 55-56 about were materially false and misleading and/or omitted information a reasonable investor would consider important and/or lacked a reasonable basis because, contrary to such statements, Defendants knew the SS&M business was facing significant operational and financial headwinds such that a 200 basis point margin expansion was not achievable, triggering events requiring impairment assessments and write-downs already occurred, and Defendants did not disclose known material adverse trends in Adient's core SS&M business.

**Defendants Belatedly Reveal Problems at SS&M, and CEO McDonald Abruptly Departs**

58.     During a Deutsche Bank Global Auto Industry Conference held on January 17, 2018, Defendants made several startling disclosures indicating Adient was not "solidly on track" to achieve the previously-touted 200 basis point margin expansion.  Among them, Defendant McDonald stated:

> First of all, being upfront, **we're really struggling in terms of our Seat Structures & Mechanisms business**.  We obviously guided to – we knew coming in this quarter, we're going to have some challenges, those intensified; and so, obviously, we're pretty disappointed in terms of how that part of our business performed this quarter.

> \*       \*       \*

> In terms of Seat Structures & Mechanisms business or our metals businesses as we sometimes call it, I guess, I just wanted to sort of ground everybody in terms of our investment thesis as we spun out from Johnson Controls.  So if you go back to the end of 2016 August – October of 2016, we came out of Johnson Controls with effectively no growth – our Chinese businesses were growing strongly, but our consolidated seating business was essentially flat.

> And, if you sort of go back in time for many, many years the automotive business was kind of the growth engine of Johnson Controls and it had been sort of constrained from a capital perspective, because Johnson Controls was sort of trying to become more of a multi-industrial.

So, coming out of the spinoff really had three things that we want to do: one, establish a more cost-effective overhead structure and reduce our SG&A; we wanted to continue to grow our Chinese operations, where we're number one in the market with about 45% market share; and we want to demonstrate that we could get back on – I would say get our growth mojo back.  And so we feel pretty good about all three of those things.  **We committed to a 200 basis points of margin expansion, which was really driven by SG&A savings, improving the margins in our Seat Structures & Mechanisms business and partially offset be investments that we needed to make to continue to grow our business.**  So that was kind of our investment thesis.

And **as we went into this quarter**, I sort of talked about the intensifying headwinds that we had.  **For sure, we're struggling especially in our Mechanisms business** and that would mainly be recliners and to a lesser extent tracks, in terms of not just the price of commodities[….]  **and I'd just say in the quarter, especially in our Mechanisms business, we were really like hand to mouth in terms of where we're going to find the next coil.  So combination of that [sic], together with launch inefficiencies that turned out to be much more problematic than we anticipated going into the quarter.**

59.     This news drove the price of Adient shares down $8.03, or about 9.8%, to close at

$74.15 on January 18, 2018.

60.     On January 29, 2018, Defendants held Adient's Q1 2018 earnings conference call

with investors.  During this call, Defendant McDonald revealed in part:

With regard to our mid-term plan, ***we certainly are not backing away from our commitment to deliver 200 basis point*** of consolidated adjusted EBIT margin improvement by the end of 2020.  With that said, ***we're currently examining the composition of this 200 basis points.  So, for example, if SS&M, our seat structures and mechanisms business, is incapable of delivering the 100 to 200 basis points of improvement by 2020***, we'll look to execute other parts of – other things within the rest of our organization to offset the shortfall.

61.     During this conference, Defendant Stafeil further revealed:

Given Q1's performance, we've heard and read a lot of commentary about the achievability of the 200 basis point margin improvement target.  You can see our progress towards that goal on slide 13.  Our seat structures and mechanisms business stands out in the page as our negative outlier performance with a 120 basis points reduction from our starting point.   No doubt, the headwinds impacting this business have significantly offset the approximate 143 basis points of improvement we've achieved in SG&A and makes achieving our goal that much [sic] difficult.

62.     During the same conference, the following exchange occurred:

**Colin Langan, Analyst**

Great.  Thanks for taking my questions.  Let me just to start off.  It sounded like the metals issues initially were somewhat one-time in nature, things like expedited freight, your outsourcing components to get them produced.  And now the forecast as the slide shows, has headwinds going through all the way to the second half of the year.  ***What has changed in the business, is there something structural now and should we expect these to persist into 2019 and into 2020?  I mean, it sounded like a lot of the initial issue was more one-time in nature related to particular plant?***

**Bruce McDonald, Chairman and Chief Executive Officer**

Yeah, Colin.  It's Bruce here.  So I think, a couple of things that I'd just note is, it takes some time to work through the containment costs that we have.  So once we experience a difficulty, there is a number of milestones the customers make us – quite rightly, make us demonstrate before we can sort of peel those resources away.  I think we've tried to be realistic here . . . .

As it relates to your comments about '19 or somewhat going into '19, clearly, ***we're pretty comfortable that the launch related problems that we have are – we're going to get behind us.  With the resources that we're putting in place, we certainly feel good about avoiding a re-occurrence in '19***.  And so, if you think about – especially if you look at the hits that we've taken in Q1 and Q2, we ought to have significant year-over-year improvement in the first half of next year.

63.     This news drove the price of Adient shares down $5.53, or about 7.6%, to close at

$66.77 that day.

64.     Then, on May 3, 2018, Defendants announced Adient's Q2 2018 financial results

in a Form 8-K filing with the SEC.  This 8-K revealed in part that Defendants recorded a net

$279 million impairment charge related to the Company's SS&M segment.

65.     During Adient's earnings conference call with investors that day Defendant

McDonald revealed:

Although **the team has been laser focused on stabilizing the SS&M business** and positive progress was made in the most recent quarter versus last quarter, we clearly review – we clearly view these results as disappointing.  **In addition to having significant impact on our financial results so far this year, we've also concluded, after completing a comprehensive strategic assessment of the**

**SS&M business, that the 200 basis points of margin expansion that Adient has set a goal to achieve by 2020 is no longer going to be achievable.**

66.     This news drove the price of Adient shares down $6.14, or about 10%, to close at $55.84 that day.

67.     Finally, on June 11, 2018, Defendants revealed McDonald stepped down from his role as Chairman and CEO effective immediately and slashed earnings guidance.

68.     This news drove the price of Adient shares down $8.88, or about 15.6%, to close at $48.10 that day.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Adient securities between October 31, 2016 and June 11, 2018 inclusive (the "Class").  Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

70.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Adient securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Adient or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

71.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the Exchange Act was violated by Defendants;

(b)     whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(c)     whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(d)     whether the price of the Company's securities was artificially inflated; and

(e)     the extent of damage sustained by Class members and the appropriate measure of damages.

72.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

73.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests that conflict with those of the Class.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

75.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

76.     Throughout the Class Period, the market price of Adient securities was inflated by the material omissions and false and misleading statements made by the Company, McDonald, and Stafeil, which were widely disseminated to the securities markets, investment analysts and the investing public.   The false and misleading statements materially misrepresented to the market the Company's financial results and prospects, and caused Adient securities to trade in excess of their true value.

77.     As a result, Plaintiff purchased Adient shares at artificially inflated prices.   When the partial truth about Adient's margin expansion and asset values was revealed to the market, the price of its shares declined in response, as the artificial inflation caused by Defendants' misrepresentations and omissions was partially removed from the price of Adient shares, thereby causing substantial damages to Plaintiff and the Class.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

78.     At all relevant times, the market for Adient shares was an efficient market for the following reasons:

(a)     Adient shares met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Adient filed periodic public reports with the SEC and the NYSE;

(c)     Adient regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the

national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

> (d)    Adient was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

79.    As a result of the foregoing, the market for Adient shares promptly digested current information regarding Adient from all publicly available sources and reflected such information in the prices of the shares.  Under these circumstances, all purchasers of Adient shares during the Class Period suffered similar injury through their purchases at artificially inflated prices and/or purchases of options tied to the artificially inflated price and a presumption of reliance applies.

## NO SAFE HARBOR

80.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized

and/or approved by an executive officer of Adient who knew that those statements were false when made.

## ADDITIONAL SCIENTER ALLEGATIONS

81.     Plaintiff repeats and realleges each and every paragraph contained above as if set forth herein.

82.     McDonald and Stafeil acted with scienter with respect to the materially false and misleading statements and omissions of material facts set forth above because they knew, or at the very least, recklessly disregarded that those statements were materially false or misleading when made.  As senior executives of Adient, their scienter is imputable to Adient.

83.     As alleged herein:

(a)     Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading;

(b)     Defendants knew that such statements or documents would be issued or disseminated to the investing public;

(c)     Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws; and

(d)     Defendants, by virtue of their receipt of information reflecting the true facts regarding Adient, their control over, and/or receipt and/or modifications of Adient's allegedly materially misleading statements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Adient, participated in the fraudulent scheme alleged herein.

## CAUSES OF ACTION

### COUNT I

### Violation of § 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

84.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

85.     By reason of the conduct described above, Adient, McDonald and Stafeil, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, directly or indirectly:

(a)     Used or employed devices, schemes, or artifices to defraud;

(b)     Made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c)     Engaged in acts, practices, or courses of business, which operated or would operate as a fraud or deceit upon other persons, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

86.     While engaging in the conduct described above, Adient, McDonald and Stafeil acted knowingly or recklessly.

87.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Adient shares.  Plaintiff and the Class would not have purchased Adient shares at the prices they paid, or at all, if they had known that the market prices were artificially and falsely inflated by Defendants' misleading statements.

- 24 -

88.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Adient shares during the Class Period.

## COUNT II

### Violation of § 20(a) of the Exchange Act
### (Against McDonald and Stafeil)

89.     Plaintiff repeats and realleges each and every paragraph contained above as if set forth herein.

90.     McDonald and Stafeil acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein.  By reason of their positions as senior executives and/or directors of Adient, they had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.  By reason of such conduct, McDonald and Stafeil are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Lead Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 4, 2018
                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            DAVID A. ROSENFELD


                                            */s/ Samuel H. Rudman*
                                            SAMUEL H. RUDMAN

                                            58 South Service Road, Suite 200
                                            Melville, NY 11747
                                            Telephone:  631/367/7100
                                            631/367/1173 (fax)

                                            HAGENS BERMAN SOBOL
                                               SHAPIRO LLP
                                            MICHAEL W. STOCKER
                                            REED R. KATHREIN
                                            DANIELLE SMITH
                                            715 Hearst Avenue, Suite 202
                                            Berkeley, CA  94710
                                            Telephone: (510) 725-3000
                                            Facsimile:  (510) 725-3001
                                            mikes@hbsslaw.com
                                            reed@hbsslaw.com
                                            danielles@hbsslaw.com

                                            *Attorneys for Plaintiff*

- 26 -

## CERTIFICATION OF JULIO BARRETO
## PURSUANT TO FEDERAL SECURITIES LAW

Julio Barreto ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed a complaint alleging securities fraud against Adient plc and various of its officers and directors, and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities law.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| ADNT | 01/22/18 | 3,000 | $71.53 |
| ADNT | 01/29/18 | 2,200 | $66.64 |
| ADNT | 01/29/18 | 3,500 | $66.70 |
| ADNT | 02/08/18 | 390 | $62.79 |
| ADNT | 02/15/18 | 410 | $63.27 |
| ADNT | 03/01/18 | 400 | $59.79 |
| ADNT | 03/01/18 | 4,000 | $59.69 |
| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
| ADNT | 02/27/18 | 3,000 | $64.48 |
| ADNT | 06/20/18 | 2,200 | $50.00 |
| ADNT | 06/20/18 | 7,500 | $50.00 |
| ADNT | 06/20/18 | 1,200 | $50.00 |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below: None

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23 day of July , 2018.

By:  Julio Barreto
                     (Signature of Representative Plaintiff)