USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/14/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE ADIENT PLC SECURITIES LITIGATION

No. 18-CV-9116 (RA)

MEMORANDUM
OPINION & ORDER

CLASS ACTION

RONNIE ABRAMS, United States District Judge:

Lead Plaintiff Bristol County Retirement System and Additional Named Plaintiff Jackson County, Missouri Revised Pension Plan (collectively, "Plaintiffs") bring this federal securities class action against Adient plc ("Adient" or the "Company"), Adient's former CEO R. Bruce McDonald, and Adient's CFO Jeffrey M. Stafeil (the "Individual Defendants," or, collectively with Adient, the "Defendants"), alleging that, from October 17, 2016 to November 8, 2018, Defendants committed securities fraud in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. On April 2, 2020, the Court granted Defendants' motion to dismiss the Second Amended Consolidated Class Action Complaint (the "SAC"), *see* Dkt. 68, and on April 7, 2020, judgment was entered in favor of Defendants, *see* Dkt. 69. Now before the Court is Plaintiffs' first motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) and for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a), as well as Plaintiffs' amended second motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) and for leave

to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a).[1]  For the reasons that follow, Plaintiffs' motions are denied.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case, which were detailed at length in its prior opinion granting Defendants' motion to dismiss.  *See In re Adient plc Sec. Litig.*, No. 18-CV-9116 (RA), 2020 WL 1644018, at *1-8 (S.D.N.Y. Apr. 2, 2020).[2]  The Court therefore only includes those facts necessary to resolve the instant motions.

### I.   Procedural History Prior to Judgment

On October 4, 2018, Plaintiff Julio Barreto filed this putative securities class action against Defendants Adient, McDonald, and Stafeil.  Dkt. 1.  On December 21, 2018, the Court consolidated this action and a related action, *Charles Eric Hyder v. Adient plc et al.*, No. 18-cv-9630, into a consolidated class action and appointed Bristol County Retirement System as Lead Plaintiff.  Dkt. 41.  On February 19, 2019, Lead Plaintiff filed a consolidated amended class action complaint.  Dkt. 49.  On April 5, 2019, Defendants moved to dismiss the amended complaint for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Dkt. 50.  Pursuant to the Court's Individual Rules, on April 15, 2019, Plaintiffs informed Defendants of their intent to file a further amended complaint.  *See* Dkt. 54.  On May 8, 2019, Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint, Dkt. 55, which Defendants moved to dismiss on June 7, 2019, *see* Dkt. 56.  Plaintiffs opposed that motion on July 8, 2019, Dkt. 60, and Defendants replied on July 24, 2019, Dkt. 61.  The Court held oral argument on the motion on December 9, 2019, *see* Dkt. 66, and granted

---

[1] As discussed below, Plaintiffs withdrew their original second motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) when they filed the amended second motion.

[2] Capitalized terms not defined in this Opinion have the same meaning as those in *In re Adient plc Sec. Litig.*, No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020).

Defendants' motion in its entirety on April 2, 2020, *see* Dkt. 68 ("MTD Opinion"). As Plaintiffs had not requested leave to amend the SAC in the event that the Court granted Defendants' motion to dismiss in full or in part, *see generally* Dkt. 60, the Court also directed the Clerk of Court to close the case. Judgment was entered on April 7, 2020. Dkt. 69.

## II.     Plaintiffs' First Motion for Relief from the Judgment

On May 5, 2020, Plaintiffs filed a motion for relief from the judgment pursuant to Rule 60(b)(6) and for leave to amend and file a proposed Third Amended Consolidated Class Action Complaint (the "proposed TAC"). *See* Dkt. 70 (the "First Motion"). The First Motion primarily sought to address certain deficiencies—identified in the Court's MTD Opinion—with respect to CW-6's allegations. The proposed TAC filed with the First Motion substantively amended only one paragraph of the SAC, *see* Dkt. 71-1 ¶ 96, as well as added an additional paragraph, *see id.* ¶ 101, both of which pertained only to CW-6's statements.[3] For instance, in this proposed TAC, CW-6 alleges that in a January 2018 meeting attended by "McDonald, Stafeil, Foster, Mitchell, and others," "it was discussed that Adient was going to miss the 200 bps margin improvement target and other related numbers due to more risk in Metals." *See id.* ¶ 101. In their First Motion, Plaintiffs acknowledge that Rule 60(b)(6) requires a showing of "extraordinary circumstances[] or extreme hardship," and argue that, if they were not permitted to amend, "[Plaintiffs] and the proposed Class [would] face the hardship of not obtaining relief from Defendants' alleged violations of the Exchange Act." First Mot., Dkt. 71, at 4; *see also id.* at 5 ("Preserving the Class's claims from the hardship of dismissal with prejudice is an extraordinary circumstance that warrants relief under Rule 60(b)(6).").

Defendants opposed the First Motion on May 19, 2020, Dkt. 72, and Plaintiffs replied on May

---

[3] In the proposed TAC filed with the First Motion, Plaintiffs also altered the phrasing of Defendant McDonald's departure from Adient, changing it from a "retirement" to a "termination." *See* Dkt. 71-1 ¶¶ 28, 310, 313.

3

26, 2020, Dkt. 74.  At the end of their reply brief in support of the First Motion, Plaintiffs indicated for the first time that they had recently "discovered new evidence that, with reasonable diligence, could not have been discovered in time to move for relief pursuant to Rule 59," and that they "expect[ed] to file a [second] motion for relief from the Judgment pursuant to Rule 60(b) by the end of next week."  See First Reply, Dkt. 74, at 9.  Thereafter, Defendants requested leave to file a brief sur-reply to address certain arguments "first raised in Plaintiffs' reply memorandum," including Plaintiffs' assertion that they anticipated filing "an even further amended complaint through a second Rule 60(b) motion," Dkt. 75 at 1 (emphasis omitted), which the Court granted, Dkt. 76.  Defendants filed their sur-reply on June 1, 2020.  Dkt. 77.  As of June 8, 2020, Plaintiffs had not yet filed a second Rule 60(b) motion, despite indicating that they would do so by the end of the prior week.  The Court thus ordered Plaintiffs to file any second Rule 60(b) motion based on "newly-discovered evidence," to the extent they still intended to do so, no later than June 12, 2020.  Dkt. 79.

### III.    Plaintiffs' Second Motion and Amended Second Motion for Relief from the Judgment

On June 12, 2020, Plaintiffs filed a motion for relief from the judgment pursuant to Rule 60(b)(2) and, again, for leave to amend and file a proposed TAC.  Dkt. 80 (the "Original Second Motion").  Before Defendants' time to respond to the Original Second Motion expired, Plaintiffs filed an amended motion for relief from the judgment pursuant to Rule 60(b)(2) and for leave to amend and file a proposed TAC, Dkt. 83 (the "Amended Second Motion" or the "Second Motion"), explaining that its Amended Second Motion "clarif[ied] and add[ed] context to certain facts" that its new confidential witness, CW-8, provided in the new proposed TAC, see Second Mot., Dkt. 84, at 2. Through the Amended Second Motion, Plaintiffs also formally withdrew the "original" Second Motion.  See id.  Unlike the First Motion, the Second Motion is based entirely on Rule 60(b)(2) and the new allegations provided by CW-8, a former "senior member of [Adient's] Executive

4

Management team during most of the Class Period," who "regularly interacted with the Individual Defendants." *See* Second Mot. at 1. According to Plaintiffs, CW-8 had "previously declined a request to be interviewed," but "agreed to be interviewed for the first time on the eve of the deadline for [Plaintiffs'] reply brief in support of [the First Motion]." *See id.* Thus, Plaintiffs contend, the Second Motion presents "an exceptional circumstance" warranting relief under Rule 60(b)(2). *See id.*

### IV.  CW-8's Allegations

As noted, the newly discovered evidence presented on Plaintiffs' Second Motion is based entirely on allegations from CW-8, a former high-level employee of the Company and the eighth confidential witness proffered by Plaintiffs. According to the proposed TAC filed with the Amended Second Motion, Dkt. 84-1 ("TAC"),[4] CW-8 was employed by JCI beginning in 1996 and was "part of the automotive group at JCI that became Adient." TAC ¶ 59. CW-8 subsequently worked for Adient until June 2018, when he retired. *See id.*; Second Mot. at 1 n.2. Specifically, CW-8 was employed as "the Vice President and General Manager of the Metals segment" at Adient, and was "part of a nine-person Executive Management Team, which also included McDonald, that was responsible for forming or 'standing up' Adient at the time of the spinoff." TAC ¶ 59. CW-8 reported to Eric Mitchell and/or Byron Foster. *See id.*

CW-8 raises many of the same concerns about alleged operational issues in Adient's Metals department as did the seven CWs detailed in the SAC. For instance, CW-8 alleges that Metals "had never done well and consistently underperformed," and was thus "a significant drain on JCI's and Adient's business." *See id.* ¶ 81. CW-8 also describes various "launch issues" that "began to impact Adient's production around the world," *see id.* ¶ 82; *see also, e.g., id.* ¶ 85, as well as certain product

---

[4] In addition to adding factual allegations from CW-8, the proposed TAC filed with the Amended Second Motion, Dkt. 84-1, also incorporated the allegations regarding CW-6 that Plaintiffs had included in the proposed TAC filed with the First Motion, Dkt. 71-1.

delays and increased costs for customers, *see, e.g.*, *id.* ¶ 83-84, 94.  CW-8 further specifies that the "operational issues" in Metals included "engineering, program management, and manufacturing, and high-cost country challenges, primarily in Germany."  *Id.* ¶ 94.

As to Adient's plan to improve Metals, CW-8 acknowledges that "Metals did record some improvements after the spinoff."  *Id.* ¶ 96.  According to CW-8, however, "these improvements were not proceeding at the pace originally planned," and, in any event, the Company "faced other challenges that were not forecasted at the time [] the turnaround plan was first developed."  *Id.*  Moreover, CW-8 contends, various issues—such as with respect to "production, engineering, lack of maturity in engineering/designs, [and] lack of preparedness"—"worsened as time progressed."  *Id.*; *see also id.* ¶ 101 ("CW-8 stated that beginning at the time of the spinoff, Metals was not improving according to the pace planned.  Rather, during the first two years after Adient's spinoff, problems that were not foreseen at the time the turnaround plan was announced had emerged including problems with production efficiencies, engineering/design, lack of preparedness, and launch issues which worsened as time progressed.").  CW-8 explains that these issues "continually 'eclipsed' any improvements made by the plan throughout his time at Adient."  *Id.* ¶ 96.  CW-8 further asserts that, as a result, "any improvements or positive steps Metals took after the spinoff, in any given month or quarter, were 'a drop in the bucket' compared to the negative issues and problems that arose each month and quarter," and that were "discussed at each of the monthly Operational Review Meetings" from November 2016 through CW-8's departure from Adient in June 2018.  *See id.*; *see also id.* ¶ 101 ("The improvements Metals did achieve were a 'drop in the bucket' compared to its launch problems.").  According to CW-8, such "launch issues" were also discussed at "Program Reviews, Launch Reviews, and Business Operational Reviews."  *See id.* ¶ 96; *see also id.* ¶ 101 (stating that the issues were also "discussed in the Operational Review decks and [at] the monthly Operational

Review meetings").

CW-8 echoes the accounts of the seven other CWs regarding Adient's senior management's knowledge and awareness of operational issues in Metals. *See, e.g.*, *id.* ¶ 98 ("According to CW-8, . . . the leadership at Adient was 'tone deaf' because they were aware of all of the operational issues with Metals production . . . ."). But CW-8 also provides additional allegations that, if accepted as true, tend to connect the Individual Defendants more directly to these issues. For instance, CW-8 asserts that McDonald and Stafeil saw "month-to-month" the "problems with the Company's launches and the very painful impact they were having on the business." *Id.* ¶ 97. As another example, CW-8 asserts that both McDonald and Stafeil "knew that the SG&A cuts were harming the availability of engineering and program launch resources required to successfully launch products and [that] driving further cuts would have further hampered product launches." *Id.* ¶ 100. CW-8 also states that such issues "would have been discussed in the Program Review Meetings and Ops Review Meetings." *Id.*

Moreover, CW-8 asserts additional allegations that pertain specifically to the 200 bps projected margin expansion. For instance, CW-8 alleges that, although the "full turnaround program was slated to take five years" and the Company's management "picked a three-year target within the turnaround plan for the 200 bps margin improvement," nonetheless, "within the first year of the spin, internal data in 2017 and 2018 did not show Adient to be on track to achieve this." *Id.* ¶ 95. CW-8 contends that such data and progress "would have been discussed at the monthly Operational Review meetings" that were attended by CW-8, Defendants McDonald and Stafeil, and "senior managers" at the Company. *See id.* CW-8 also states that it was "clear early on that Adient was not hitting certain milestones" with respect to the five-year "turnaround program." *See id.* According to CW-8, the fact that "the [product] design was not stable . . . ultimately had a detrimental impact on the timing of the product launches, and led to Adient not being able to achieve the 200 bps margin improvement." *Id.*

¶ 83. At the same time, though, CW-8 admits that "the margin improvement plan was feasible at the time it was announced," *id.* ¶ 98, and CW-8 "could not recall the exact date when it was clear that Adient was not going to achieve the 200 bps margin improvement," *id.* ¶ 99. Nevertheless, CW-8 alleges that "it became clear to him early on that the product design was not robust enough given what was demanded by customers." *Id.* CW-8 also asserts that "the actions baked into the turnaround plan needed to be executed 'perfectly' in order to achieve that goal." *Id.* ¶ 98.

Finally, CW-8 addresses two specific statements made by the Individual Defendants during the Class Period: (1) a November 2016 statement by Stafeil that "[w]e do see a big improvement in [M]etals," *see id.* ¶ 101, 137, 319, and (2) an April 2017 statement by McDonald that the "business continues to improve," and that "we are starting to see the accretive margin impact of launching those next-generation products into the market," *see id.* ¶ 101, 154, 321. According to CW-8, these two statements were "technically accurate at the time," but they "omitted the larger problems that Metals faced at the time with upcoming launches which . . . 'eclipsed' any improvements Metals actually saw in other areas." *Id.* ¶ 101.

## LEGAL STANDARDS

"[A] party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)) (alteration omitted). Indeed, "[i]t would be contradictory to entertain a motion to amend the complaint without a valid basis to vacate the previously entered judgment." *Id.* (quoting *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991)) (internal quotation marks omitted). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments

and the expeditious termination of litigation." *Id.* (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (per curiam)). "Unlike the liberal standard under Rule 15, Rule 60(b) standards are more stringent and place significant emphasis on the value of finality and repose." *Sahni v. Staff Attorneys Ass'n*, No. 14-CV-9873 (NSR), 2018 WL 654467, at *3 (S.D.N.Y. Jan. 30, 2018) (internal quotation marks and citation omitted). Nonetheless, "considerations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment." *Williams*, 659 F.3d at 213. Rather, "postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." *Id.* The Second Circuit has also stated in dicta that, "in view of the provision in [R]ule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' . . . it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *See Nat'l Petrochemical*, 930 F.2d at 245.

Rule 60(b) provides that a court may relieve a party from a final judgment for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b)(6) is considered a "catch-all provision" that is "properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Metzler Inv.*, 970 F.3d at 143 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

As to Rule 60(b)(2), to prevail on a motion for relief from a judgment based on "newly discovered evidence," the movant must establish that: "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant . . . [was] justifiably ignorant of them despite due diligence, (3) the evidence . . . [is] admissible and of such importance that it probably would have changed the outcome, and (4) the evidence [is] not [] merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citation omitted). "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer*, 793 F.2d at 61). "The burden of proof on a Rule 60(b) motion is on the party seeking relief from the earlier judgment or order—in this case, Plaintiffs." *In re Gildan Activewear, Inc. Sec. Litig.*, No. 08 Civ. 5048 (HB), 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009). The Second Circuit has noted that "[t]he party seeking relief from judgment has an onerous standard to meet." *Teamsters*, 247 F.3d at 392.

Lastly, Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Notwithstanding the liberal standard of Rule 15(a), however, a court may deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A proposed amendment is [] deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss." *Najjar Grp., LLC v. West 56th Hotel LLC*, No. 14-CV-7120 (RA), 2017 WL 819487, at *3 (S.D.N.Y. Mar. 1, 2017) (citation omitted). District courts have broad discretion in ruling on a motion for leave to amend a complaint. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010) (collecting cases). Moreover, "[w]hen the moving party has had an opportunity to

10

assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). Indeed, "even where a movant can demonstrate that one of the enumerated grounds in Rule 60(b) applies, in order to prevail the movant must still demonstrate a strong case that the movant has a meritorious claim." *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, No. 07-CV-0349 (LAP) (FM), 2012 WL 4471267, at *3 (S.D.N.Y. Sept. 21, 2012) (citation omitted); *see also Williams*, 659 F.3d at 213 ("Rule 15's liberality must be tempered by considerations of finality.").

## DISCUSSION

As a preliminary matter, Plaintiffs have not established any "extraordinary circumstances" under Rule 60(b)(6), or that the Court's April 2020 judgment would "work an extreme and undue hardship" on them such that they are entitled to relief under Rule 60(b)'s catch-all provision. *Metzler Inv.*, 970 F.3d at 143. In their First Motion, Plaintiffs merely assert that granting Defendants' motion to dismiss the SAC without explicitly granting Plaintiffs leave to amend constitutes a "hardship" and thus, "an extraordinary circumstance that warrants relief under Rule 60(b)(6)." First Mot. at 5; *see also id.* at 4 ("Here, absent an opportunity to further amend, [Plaintiffs] and the proposed Class face the hardship of not obtaining relief from Defendants' alleged violations of the Exchange Act."); First Reply at 4 n.2 (explaining that the "extreme hardship" here "arises from [Plaintiffs] being foreclosed from presenting the allegations of [the] TAC"). Yet Plaintiffs cite no relevant case law to support their contentions that a court's mere granting of a motion to dismiss—without specifically providing leave to amend—somehow rises to the level of "extraordinary circumstances" or "extreme and undue

11

hardship" under Rule 60(b)(6).[5] Moreover, Plaintiffs seem to ignore the fact that they never actually sought leave to amend prior to when the Court issued the MTD Opinion. As Defendants point out, "Plaintiffs never, in any form, requested leave to amend their Second Amended Complaint prior to the Court's [MTD Opinion]—not in a formal motion, not in a footnote to their opposition brief, and not even during oral argument." Sur-Reply, Dkt. 77, at 3 n.1. As such, the Court "did not identify any basis for its decision to direct the matter closed nor [] any reason why Plaintiff[s] would be unable to cure [their] pleading," First Reply at 3, simply because Plaintiffs never indicated any desire to do so. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' . . . no court can be said to have erred in failing to grant a request that was not made."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (explaining that plaintiffs' "contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous"). Even after the Court issued its MTD Opinion, and before the Clerk of Court entered judgment, Plaintiffs did not submit any request to amend the SAC or cure the deficiencies identified in the MTD Opinion. In sum, Plaintiffs have failed to meet their burden under Rule 60(b)(6), and their request for relief under that provision is denied.

Although perhaps a closer question, Plaintiffs have also failed to satisfy the requirements of Rule 60(b)(2). At the very least, Plaintiffs have not established that they were "justifiably ignorant"

---

[5] The cases cited in Plaintiffs' First Reply are inapposite. In *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017), the plaintiff had, in his papers opposing the defendants' motion to dismiss, "expressly asked to be allowed to replead in the event of an adverse ruling," *id.* at 25, and the district court thus explicitly addressed the request, which the defendants had opposed, *see Cresci v. Mohawk Valley Cmty. Coll.*, No. 14-CV-1172 (GTS/TWD), 2015 WL 13037477, at *4, *9 (N.D.N.Y. Sept. 11, 2015). In *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274 (2d Cir. 2006), the Second Circuit affirmed the district court's decision to *not* grant the plaintiff leave to amend his complaint, observing that, while the plaintiff had not filed a formal motion for leave to amend his complaint, he had stated his request to do so in his opposition brief to defendants' motion to dismiss, *see id.* at 275, but nevertheless concluding that plaintiff had failed to "advise the district court how the complaint's defects would be cured" if he were to amend, *see id.* at 276. Finally, in *421-A Tenants Ass'n, Inc. v. 125 Court Street LLC*, 760 F. App'x 44 (2d Cir. 2019), the plaintiffs appealed, among other things, the district court's decision to deny their motion for reconsideration and for leave to amend the complaint, which was filed as a formal motion subsequent to the court's decision on defendants' motion to dismiss. *See id.* at 50.

of the new evidence proffered by CW-8 "despite due diligence." *Teamsters*, 247 F.3d at 392. "Because 'a motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances,' a party moving under Rule 60(b)(2) must meet an 'onerous standard'" to be entitled to such relief. *Vector Capital Corp. v. Ness Techs., Inc.*, No. 11 Civ. 6259 (PKC), 2012 WL 1948822, at *10 (S.D.N.Y. May 24, 2012) (quoting *Teamsters*, 247 F.3d at 391-92); *see also Apex Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11 Civ. 9718 (ER), 2017 WL 456466, at *7 (S.D.N.Y. Feb. 1, 2017) (explaining that the Rule 60(b)(2) requirements "must be strictly met") (internal quotation marks and citation omitted). In order "to ensure that a Rule 60(b) motion is not simply 'employed as a vehicle . . . for introducing new evidence that could have been adduced during the pendency of the underlying motion,'" *Prince v. Jelly*, No. 17-CV-01284 (SRU), 2018 WL 806577, at *3 (D. Conn. Feb. 9, 2018) (citation omitted), the movant must show that the evidence "is 'truly newly discovered' and 'could not have been found by due diligence' prior to the entry of the judgment from which relief is sought," *In re Stage Presence Inc.*, No. 12-10525 (MEW), 2016 WL 3582650, at *4 (Bankr. S.D.N.Y. June 24, 2016) (citation omitted). "[E]vidence is not 'new' under Rule 60(b)(2) if it could have been discovered with reasonable diligence at the time of final judgment." *Manney v. Intergroove Tontrager Vertriebs GmbH*, No. 10-CV-4493 (SJF) (WDW), 2012 WL 4483092, at *3 (E.D.N.Y. Sept. 28, 2012).

Plaintiffs admit that they were aware of CW-8, a former high-level employee of Adient, as early as February 2019—three months before Plaintiffs filed the SAC and over a year before the Court issued the MTD Opinion. Indeed, Plaintiffs' investigator contacted CW-8 on February 1, 2019, seeking to schedule an interview, but was apparently told that "as part of [CW-8's] retirement from Adient"—which occurred in June 2018—CW-8 had "signed a non-compete and non-disclosure agreement that prevented him from discussing Adient's business, senior leaders, board members,

officers, and directors." Buell Decl., Dkt. 85, ¶ 2.[6] CW-8 subsequently informed Adient that CW-8 had "declined to be interviewed." Buell Decl. ¶ 2. According to Plaintiffs, their investigator "offered to raise CW-8's agreement with the Court" on February 6, 2019, but "CW-8 did not respond." Buell Reply Decl. ¶ 2.

Plaintiffs apparently did not follow up with CW-8 again after February 6, 2019.[7] This is true despite the fact that, in light of Defendants' motion to dismiss that was filed in April 2019, Dkt. 50, Plaintiffs were given another opportunity to amend their complaint, and indeed filed their Second Amended Complaint, in May 2019, *see* Dkt. 55. Instead, Plaintiffs reached out to CW-8—for the first time since February 2019—on April 6, 2020, i.e., only after the Court issued the MTD Opinion, granting Defendants' motion to dismiss the SAC in full. *See* Buell Decl. ¶ 2. Plaintiffs state that CW-8 responded to their April 2020 inquiry on May 25, 2020, and that he was interviewed the next day, on May 26th. *See id.* They further assert that CW-8 was interviewed for a second time on June 9, 2020. *See id.* They nonetheless do not explain why the "newly discovered evidence" allegedly revealed by CW-8 in May and June 2020 could not have been discovered "with reasonable diligence" in the prior 15 to 16 months. Even assuming that CW-8 was prohibited from speaking about Adient and its executives pursuant to a one-year agreement, as Plaintiffs contend they were told, Plaintiffs do not explain why they did not pursue CW-8 again in June 2019—one year after his retirement from the Company—or even in February 2020—one year after he mentioned the "one year non-compete and non disclosure agreement," Buell Reply Decl. ¶ 2, at either of which time any "one year" agreement should have expired. The Court agrees with Defendants that, under these circumstances,

---

[6] Specifically, in a "LinkedIn message," CW-8 apparently stated the following to Lead Counsel's investigator: "Part of my retirement separation agreement includes a one year non-compete and non disclosure agreement. I believe therefore that I am prevented by my non-disclosure agreement to discuss any of Adient's business or to discuss anything to do with senior leaders, board members, office[r]s, and directors." Buell Reply Decl., Dkt. 88, ¶ 2.

[7] Plaintiffs filed their first Amended Complaint on February 19, 2019. *See* Dkt. 49.

14

"Plaintiffs' wait-and-see approach—essentially suspending their investigation pending an advisory opinion from the Court—should not be tolerated." Second Opp'n, Dkt. 86, at 4.

In other words, while Plaintiffs may not have known exactly what CW-8 would report about the Company or the Individual Defendants, the Court cannot find that they were "justifiably ignorant" of those facts. *See, e.g.*, *In re Optionable Sec. Litig.*, No. 07 Civ. 3753 (PAC), 2009 WL 1653552, at *4 (S.D.N.Y. June 15, 2009) (concluding that "[e]ven if some of the particular underlying facts that later came out . . . could be considered 'newly discovered,' it [was] clear that Plaintiffs were not justifiably ignorant of those facts" because "instead of waiting for more facts to emerge—or even requesting from [the court] more time to amend the complaint—Plaintiffs chose to file on insufficient allegations, perhaps to gain a tactical advantage"); *see also Sexton v. Karam*, 648 F. App'x 108, 110 (2d Cir. 2016) (affirming district court's conclusion that plaintiff "did not act with the diligence necessary for Rule 60(b)(2) relief" because "he did not seek [the relevant] documents until . . . after the . . . entry of judgment"); *Apex Emp. Wellness*, 2017 WL 456466, at *8 (denying Rule 60(b)(2) motion in part where the movant "failed to meet [the onerous] standard because it ha[d] not shown that it was diligent in seeking out [the new] evidence"). Indeed, "Rule 60(b) is not a do-over when more facts emerge." *In re Optionable Sec. Litig.*, 2009 WL 1653552, at *4; *see also Lorusso v. Borer*, 260 F. App'x 355, 357 (2d Cir. 2008) ("Rule 60(b) does not exist to provide a remedy for plaintiffs' counsel's tactical decisions."). Plaintiffs have thus failed to establish that they were "justifiably ignorant" of the "new evidence" recently provided by CW-8 despite the exercise of due diligence, and their motion pursuant to Rule 60(b)(2) is therefore denied.[8]

In sum, "[r]elief under Rule 60(b) is generally not favored and is properly granted only upon

---

[8] Because the Court concludes that Plaintiffs have not met the second factor of the Rule 60(b)(2) analysis, it need not address the other factors at this time.

15

a showing of exceptional circumstances." *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (internal quotation marks and citation omitted). For the reasons discussed above, Plaintiffs have not sufficiently demonstrated that such "exceptional circumstances" are present here.

Finally, the Court also denies Plaintiffs' request for leave to amend the complaint pursuant to Rule 15(a) because leave to amend is only proper where the previously-entered judgment has been vacated pursuant to Rule 60(b). *See Nat'l Petrochemical*, 930 F.2d 240 at 245 ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions to set aside the judgment pursuant to Federal Rules of Civil Procedure 60(b)(2) and 60(b)(6) and for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a) are denied. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 70, 80, and 83.

SO ORDERED.

Dated:   October 14, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge